# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LARRY SHAW,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | No. 1:17-cv-03026-SAB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Plaintiff Larry Shaw's Motion for Summary Judgment, ECF No. 12, and Defendant Commissioner of the Social Security Administration's Cross-Motion for Summary Judgment, ECF No. 13. The motions were heard without oral argument. Plaintiff is represented by D. James Tree, and Defendant is represented by Assistant United States Attorney Timothy Durkin and Special Assistant United States Attorney Daphne Banay. For the reasons set forth below, the Court **grants** Plaintiff's motion, **denies** Defendant's motion, **reverses** the administrative law judge ("ALJ"), and **remands** for a determination of Social Security payments with an onset date of February 15, 2013.

## Jurisdiction

On August 12, 2013, Plaintiff filed an application for supplemental security income disability insurance benefits. Plaintiff alleges an onset date of August 1, 2012.

//

Plaintiff's application was denied initially and on reconsideration. Thereafter, Plaintiff amended his alleged onset date to February 15, 2013. On February 23, 2015, Plaintiff appeared and testified at a hearing held in Yakima, Washington before ALJ Virginia Robinson. The ALJ issued a decision on July 20, 2015, finding that Plaintiff was not disabled. Plaintiff timely requested review by the Appeals Council, which denied the request on December 13, 2016. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner.

Plaintiff filed a timely appeal with the United States District Court for the Eastern District of Washington on February 13, 2017. The matter is before this Court under 42 U.S.C. § 405(g).

## Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. § 416.920(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. *Id.*; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 2

denied. 20 C.F.R. § 416.971. If he is not, the ALJ proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least twelve months and must be proven through objective medical evidence. 20 C.F.R. § 416.908-.909. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. § 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before considering Step 4, the ALJ must first determine the claimant's residual functional capacity. 20 C.F.R. § 416.920(e). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. § 416.920(f). If the claimant is able to perform his previous work, he is not disabled. *Id.* If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of his age, education, and work experience? 20 C.F.R. § 416.920(g).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. *Id.* At

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 3

step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

## Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Court reviews the entire record. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## Statement of Facts

The facts have been presented in the administrative transcript, the ALJ's decision, and the briefs to this Court; only the most relevant facts are summarized here. At the time of the hearing, Plaintiff was forty-six years old. Plaintiff has a ninth-grade education and previously worked as a ranch hand and a mason.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 4

Plaintiff testified that he began experiencing severe back pain in 2001 while working as a mason. His back pain worsened over time. Plaintiff cannot be on his feet for long as it causes pain into his hip; it feels like sand bags are weighing him down. When he sits his legs and knee caps become numb so he must lay down with his legs elevated; it takes approximately thirty minutes for him to stand back up. During an eleven-hour period, Plaintiff must lay down and elevate his legs for five or six hours. He is able to do household chores and care for his horses with frequent breaks.

In February 2013, Plaintiff's treating physician Dr. Jeremiah Crank, M.D., found that Plaintiff had positive straight leg testing when sitting and supine, his cervical spine was tender with mildly reduced range of motion, and crepitus was present. Dr. Crank opined that Plaintiff was severely limited and unable to meet the demands of sedentary work. In April 2013, imaging revealed multilevel degenerative disc disease and degenerative facet arthrosis of the lower lumbar spine and spondylosis of the thoracolumbar spine. James Bailey, PhD, found Plaintiff disabled as of September 1, 2012 under the Department of Social and Health Services standard; Plaintiff testified that he receives $197 per month from the Department.

Plaintiff also testified that he has auditory hallucinations, hearing people talking to him that are not visually present. He also will see people out of the corner of his eye that are not physically there. The hallucinations began in June of 2012 and makes it difficult to concentrate. Plaintiff is taking medication for his hallucinations, but he still hears voices. Plaintiff also suffers from depression. In February 2013, Aaron Burdge, Ph.D, opined that Plaintiff's test results suggest a person with significant thinking and concentration problems, accompanied by agitation and distress. He is likely to be withdrawn and isolated and his social judgment is probably fairly poor. Plaintiff is likely to have difficulty making decisions, even about matters of little apparent significance.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT + 5**

## The ALJ's Findings

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 12, 2013. AR 24.

At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, hypertension, and gastroesophageal reflux disease ("GERD"). AR 24.

At step three, the ALJ found that Plaintiff's impairments or combination of impairments do not meet or medically equal any Listing. AR 27.

The ALJ concluded that Plaintiff has the residual functional capacity to perform

> A reduced range of light work as defined in 20 CFR 416.967(b). Specifically, the claimant can lift or carry up to 20 pounds occasionally and up to 10 pounds frequently, stand or walk for approximately 6 hours and sit for approximately 6 hours per 8-hour workday with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; should avoid concentrated exposure to pulmonary irritants and work place hazards such as dangerous machinery or working at unprotected heights.

AR. 28. At step four, the ALJ found that Plaintiff is incapable of performing any past relevant work. AR 31.

At step five, the ALJ found Plaintiff was not disabled on the basis that he could perform other work which exists in significant numbers in the national economy, including positions such as production assembler, cashier, and housekeeper. AR 32.

## Issues for Review

1. Whether the ALJ committed reversible error by improperly considering the medical opinion testimony;
2. Whether the ALJ committed reversible error by discrediting Plaintiff;

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 6

3. Whether the ALJ committed reversible error by failing to consider Plaintiff's mental impairments and obesity as medically-determinable severe impairments.

**Discussion**

*1. Whether the ALJ committed reversible error by improperly considering the medical opinion testimony.*

The ALJ is tasked with resolving conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Generally speaking, three types of doctors provide medical evidence: treating doctors, examining doctors, and reviewing (non-examining) doctors. "By rule the Social Security Administration favors the opinion of a treating physician over non-treating physicians." 20 C.F.R. § 416.927[1]; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight." *Orn*, 495 F.3d at 631. If a treating physician's opinion is not given "controlling weight" because it does not meet these requirements, the ALJ should consider (i) the length of the treatment relationship and the frequency of examination by the treating physician; and (ii) the nature and extent of the treatment relationship between the patient and the treating physician in determining the weight it will be given. *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing

---

[1] 20 C.F.R. § 416.927(c)(2) states: Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 7

nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

    a. Jeremiah Crank, M.D.

Dr. Crank is Plaintiff's treating physician. In February 2013, Dr. Crank conducted a physical evaluation and diagnosed Plaintiff lower back pain with radiation to right buttock and episodic lower leg numbness with concern for herniated disc/nerve impingement; neck and upper back pain with occasional numbness; depression and hallucinations; hypertension; and polyuria, likely BPH. He opined that Plaintiff had moderate limitations with regard to sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, and crouching due to his back and neck pain. Moderate limitations are defined as significant interference with the ability to perform one or more basic work-related activities. AR 255. Accordingly, Dr. Crank opined that Plaintiff was severely limited and unable to meet the demands of sedentary work.

In the opinion, the ALJ gave Dr. Crank's opinion "little weight." Specifically, the ALJ discounted Dr. Crank's opinion as inconsistent with the objective findings and observations by him and Plaintiff's other treatment providers and "admittedly" based in large part on Plaintiff's subjective reports. The ALJ also noted that "[w]hile there are some objective findings consistent with Dr. Crank's tentative diagnoses, those findings do not support the degree of functional limitation proffered." AR 30.

Instead of giving controlling weight to Dr. Crank's medical opinion as Plaintiff's treating physician, the ALJ credited the opinion of Gordon Hale, M.D., a consultative evaluator, with great weight. AR 30. In December 2013, Dr. Hale reviewed Plaintiff's file noting severe impairments of disorders of back-discogenic

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 8

and degenerative; essential hypertension; other disorders of gastrointestinal system; substance addition disorder; and a non-severe affective disorder. AR 88. Dr. Hale opined that Plaintiff would be limited to light work. Specifically, Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently; stand and walk six hours in an eight-hour day; sit six hours in an eight hour day; and had no pushing or pulling limitations. He further opined that Plaintiff could frequently climb ramps and stairs, climb ladders, balance, stoop, kneel, crouch, and crawl. He advised the Plaintiff should avoid concentrated exposure to workplace hazards such as running machinery and unprotected heights. AR 90-91. The ALJ gave Dr. Hale's opinion great weight as generally consistent with the physical examinations and course of treatment evidenced in the medical records. AR 30.

In the opinion, the ALJ did not lay out the standard for discounting the opinion of a treating physician; nor does the ALJ explain why examining physician Dr. Hale's opinion is more persuasive than Dr. Crank's. Where the ALJ finds that a treating physician's opinion is contradicted, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (9th Cir. 2014). The ALJ can satisfy this requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (quoting *Reddick*, 157 F.3d at 725).

Here, the ALJ merely stated that Dr. Crank's opinion was inconsistent with the objective findings and his diagnoses did not support the degree of functional limitation proffered. The ALJ pointed to no evidence in the record that specifically contradicted Dr. Crank's opinion and failed to set out a thorough summary of the facts and conflicting evidence; no findings were made. This failure was error.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 9

Furthermore, the ALJ stated, without explanation, that Dr. Crank's opinion was "admittedly" based in large part on Plaintiff's self-report. AR 30. The Court finds no admission in the record. To the contrary, while Dr. Crank noted Plaintiff's self-reported symptoms, there is no indication that he relied more heavily on self-reports than objective medical evidence. Dr. Crank performed his own physical examinations, ordered and examined x-rays and MRIs, and prescribed Plaintiff medication. The Court is satisfied that Dr. Crank did not rely more heavily on Plaintiff's self-reports than clinical observations, and his opinion was improperly discounted. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Moreover, Dr. Crank's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record," thus, it should have been given controlling weight. *Orn*, 495 F.3d at 631. At the time of his report finding Plaintiff unable to work, Dr. Crank noted positive objective findings including a bilateral positive straight leg test, decreased range of motion, tenderness and palpitation in the spine, and crepitus of the cervical spine. Additionally, imaging ordered by Dr. Crank confirmed that Plaintiff suffers multilevel degenerative disc disease and degenerative facet arthrosis of the lower lumbar spine, spondylosis of the thoracolumbar spine, and cervical facet arthrosis most prominent at the C7-T1 level. A subsequent physical therapy evaluation found that Plaintiff demonstrated decreased thoracic range of motion, decreased thoracic extensor strength, upper crossed syndrome, right rotation in the T4-T8 and left rotation in the T9 vertebrae, and decreased right upper extremity strength. These evaluations are consistent with Dr. Crank's opinion. Because Dr. Crank's opinion is supported by medically acceptable techniques and consistent with substantial evidence in the record, it was error for the ALJ not to give his opinion controlling weight.

//

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 10

b. Philip G. Barnard, Ph.D.

Dr. Barnard performed a psychological evaluation on Plaintiff in March of 2014. He diagnosed Plaintiff with Other Specified Schizophrenia Spectrum and Other Psychotic Disorder with persistent auditory hallucinations. He found that Plaintiff would have moderate limitations in communicating and performing effectively in a work setting; completing a normal work day and work week without interruptions from psychologically based symptoms; and the ability to maintain appropriate behavior in a work setting. Moderate limitation is defined as "significant limits on the ability to perform one or more basic work activit[ies]." AR 519. Consequently, Dr. Barnard determined that Plaintiff's auditory hallucinations would affect his ability to work on a daily basis to a mild extent. The ALJ accorded Dr. Barnard's opinion some weight as consistent with his objective findings and treatment records from the Central Washington Comprehensive Mental Health Clinic. The ALJ determined that the record demonstrates that Plaintiff's symptoms are well managed with psychotropic medication and outpatient behavioral therapy.

The ALJ also gave some weight to the medical opinion of Aaron Burdge, Ph.D. who examined Plaintiff in February 2013, prior to Plaintiff's alleged onset date. Dr. Burdge diagnosed Plaintiff with polysubstance dependence and pain disorder associated with both psychological factors and a general medical condition. He assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 70; this score is indicative of mild symptoms of difficulty in social and occupational functioning. Yet, Dr. Burge found no significant limit on the ability of Plaintiff to perform work activities. Plaintiff's Personality Assessment Inventory ("PAI") test results also suggested significant thinking, concentration, and social interaction and judgment problems. Again, Dr. Burdge found no limitations.

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 11

It is apparent from the ALJ's decision that Dr. Burdge's medical opinion was favored over Dr. Barnard's. This was error. "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the SSA] will give to that medical opinion." 20 C.F.R. § 416.927. Dr. Burdge's opinion, unlike that of Dr. Barnard is not only internally inconsistent, it is inconsistent with the record as a whole. While Dr. Burdge acknowledged that Plaintiff's GAF score is indicative of mild symptoms of difficulty in social and occupational functioning, he found no or mild limitations on Plaintiff's ability to work. A mild limitation is one that does not significantly limit the ability of Plaintiff to work. This finding is inconsistent with Plaintiff's auditory hallucinations and GAF score. The ALJ focuses on Dr. Burdge's opinion that Plaintiff may not have answered PAI questions in a forthright manner as his responses to some particular items were idiosyncratic. However, Dr. Burdge does not specifically identify why he believes that Plaintiff was less than forthright in his responses. The PAI results suggest a person with significant thinking and concentration problems; this is consistent with Plaintiff's testimony and the record as a whole. Moreover, Dr. Burdge's opinion was rendered prior to Plaintiff's alleged onset date and not is dispositive of disability.

Dr. Barnard, on the other hand, found significant limits on the ability of Plaintiff to perform one or more basic work activities. This opinion is consistent with the record and Plaintiff's testimony, which was improperly discredited by the ALJ. Plaintiff testified that he frequently experiences auditory hallucinations; he hears people talking to him that are not physically present. He must write down steps in order to accomplish a task or he will be distracted by voices; he feels like these voices are trying to control his life. Plaintiff's testimony is supported by Frank Garner, M.D.'s psychiatric evaluation wherein he noted that Plaintiff was "clearly interrupted from time to time from commentary voices that are ongoing." He prescribed Haloperidol, an antipsychotic used to treat hallucinations. Plaintiff

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 12

testified that the medication has helped, but he still experiences auditory hallucinations.

For the reasons stated above, the ALJ improperly discounted the opinion of Dr. Barnard in favor of Dr. Burdge. Dr. Barnard's opinion should have been given more weight as it is consistent with the record as a whole. *See* 20 C.F.R. § 416.927.

c.  James Bailey, Ph.D.

Dr. Bailey examined Plaintiff of behalf of the Washington State Department of Social and Health Services ("DSHS"). In March 2013, Dr. Bailey determined that Plaintiff was under a disability beginning on September 1, 2012 with mild limitations. There is no evidence of record that the ALJ considered Dr. Bailey's opinion.

The Ninth Circuit has held that findings of disabilities of other federal agencies must be considered in the ALJ's decision and are entitled to some weight, particularly with regard to the Department of Veterans Affairs ("VA"). *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). "[A]lthough a VA rating of disability does not necessarily compel the [Social Security Administration ("SSA")] to reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's finding in reaching his decision," given the "marked similarity between these two federal disability programs." *Id.* at 1076. Plaintiff contends that the ALJ should have considered DSHS's, a state agency, disability determination. However, Plaintiff has offered no evidence or specific argument regarding the similarity between DSHS and the SSA. Therefore, the Court declines to hold that the ALJ errored in failing to consider Dr. Bailey's evaluation. *See Ledoux v. Astrue*, No. 3:10-cv-05858-KLS, 2011 WL 5023393 (W.D. Wash. Oct. 18, 2011). However, Dr. Bailey's assessment is persuasive evidence that Plaintiff has been under a disability.

//

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 13

In sum, the ALJ reversibly erred in failing to give Dr. Crank's opinion controlling weight and discounting the opinion of Dr. Barnard in favor of Dr. Burdge.

2. *Whether the ALJ committed reversible error by discrediting Plaintiff.*

An ALJ's assessment of a claimant's credibility is entitled to "great weight." *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir.1990). When there is no evidence of malingering, the ALJ must give "specific, clear and convincing reasons" for rejecting a claimant's subjective symptom testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. §§ 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

> 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 14

SSR 96-7P, 1996 WL 374186. Daily activities may be grounds for an adverse credibility finding if (1) Plaintiff's activities contradict his other testimony, or (2) Plaintiff "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))

The ALJ found Plaintiff only partially credible. In the opinion the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, the ALJ stated that Plaintiff's statements concerning the intensity, persistence, and limiting effects are not entirely credible. The ALJ gave the following reasons: (1) Plaintiff's work history suggests that his present unemployment is not due to his medical impairments; (2) Plaintiff described daily activities that are not limited to the extent one would expect; and (3) Plaintiff has made inconsistent statements regarding matters relevant to the issue of disability. For the reasons discussed herein, the ALJ's credibility determination was made in error.

First, the ALJ properly notes that Plaintiff's work history is not entirely verifiable because most of his work was done "under the table." Despite an unverified work history, the ALJ found that Plaintiff's work history suggests that his present unemployment is not due to medical impairments, but rather lack of available work. The record simply does not support this conclusion. Plaintiff testified at the hearing that he applied for Social Security benefits in August 2013 because he was unable to meet the demands of an employer. In his Disability Report, Plaintiff indicated that he stopped working in January 2011 "[b]ecause of other reasons." AR 197. He reported that he left his full-time job in 2005 due to lack of work but continued working on a temporary basis until 2011. From 2005 through 2011 Plaintiff testified that his girlfriend took care of him with settlement money she had received and he would put ads on Craigslist to work as a handyman

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 15

in the interim. Nothing in the record suggests that Plaintiff stopped working in 2011 due to lack of available work rather than medical impairments and it was error for the ALJ to find to the contrary.

Second, the ALJ determined that Plaintiff's daily activities are not limited to the extent one would expect. Specifically, the ALJ noted that Plaintiff provides all of his self-care needs, does household chores and cleaning, manages his financial and medical affairs, and takes care of pets on a daily basis. The Ninth Circuit has "warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Recognizing that claimants should not be penalized for attempting to lead their normal lives, "only if Plaintiff's level of activity is inconsistent with his claimed limitations would these activities have any bearing on his credibility." *Id.* Plaintiff's testimony regarding his daily activities is consistent with his limitations.

Plaintiff testified that he can do light chores for a few hours a day but must lay down and elevate his feet on the couch for thirty minutes at a time for approximately five or six hours in an eleven-hour day. Standing or sitting are painful. Plaintiff also experiences auditory hallucinations that make chores difficult. He has difficulty controlling his thoughts and has to write down the steps it takes to complete a task or finish a recipe; another voice tells him what he should be doing. Plaintiff does take care of two horses but testified that he must take frequent breaks to elevate his feet when grooming and feeding them. He requires that hay be delivered because he cannot load or unload it anymore. In feeding, Plaintiff carries flakes to the horses after the hay is unloaded; a flake weighs approximately five or seven pounds. While Plaintiff is able to complete certain daily tasks, "the mere fact that a plaintiff has carried on certain daily

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 16

activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Plaintiff's testimony is consistent with his claimed limitations and the ALJ erred in discrediting Plaintiff on this ground.

Third, the ALJ noted inconsistencies in Plaintiff's statements. The ALJ mistakenly states that Plaintiff indicated to Dr. Burdge on February 17, 2013 that he experienced no mental health problems, yet on February 8, 2013 informed Dr. Crank that he experienced auditory hallucinations. In actuality, Plaintiff saw Dr. Brudge on February 7, 2013, before he saw Dr. Crank. Nevertheless, Dr. Burdge's evaluation of Plaintiff revealed positive answers for delusions and hallucinations, including that Plaintiff hears voices that no one else can hear. Any inconsistency here is inconsequential and insufficient to discredit Plaintiff's testimony.

The record simply does not support the ALJ's credibility determination. Plaintiff's testimony regarding his daily activities is consistent with his testimony about his functional limitations, particularly in regard to his back and neck pain and auditory hallucinations. There is nothing in the record to suggest that Plaintiff stopped working in 2011 due to lack of work and any inconsistency in his statements to treatment providers are inconsequential. Because the ALJ did not provide specific, clear, and convincing reasons for rejecting a claimant's subjective symptom testimony, the ALJ committed reversible error.

*3. Whether the ALJ committed reversible error by failing to consider Plaintiff's mental impairments and obesity as medically-determinable severe impairments.*

Plaintiff submits that the ALJ erred by failing to consider Plaintiff's mental impairments and obesity as medically-determinable severe impairments. However, the Court need not consider the issue. Had the ALJ properly gave controlling weight to Dr. Crank's medical opinion and properly credited Dr. Barnard's

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 17

medical opinion and Plaintiff's symptom testimony, Plaintiff would have been found disabled within the meaning of the Social Security Act.

### Conclusion

Here, the ALJ erroneously rejected medical opinion evidence and Plaintiff's symptom testimony; if this evidence had been properly credited, Plaintiff would have been found disabled. A review of the record as a whole, including the testimony of the vocational expert in concert with the properly-credited opinions of Dr. Crank and Dr. Barnard, creates no legitimate doubt that Plaintiff is disabled within the meaning of the Social Security Act. Further administrative proceedings will not be useful and there are no outstanding issues to consider. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). Consequently, the proper remedy is to remand for a calculation and award of appropriate benefits. *Garrison*, 759 F.3d at 1019-20.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 18

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

3. The decision of the Commissioner denying benefits is **reversed** and **remanded** for an award of benefits, with a disability onset date of February 15, 2013.

4. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, provide copies to counsel, enter judgment, and close the file.

**DATED** this 3rd day of September 2017.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** + 19